Good morning, Your Honors. May it please the Court. Elizabeth Richardson-Royer, appearing on behalf of the appellant, Vanessa Rodriguez. I plan to reserve two minutes for rebuttal, but I will keep an eye on the clock. All right. Thank you, Counsel. This case highlights the challenges that pro se petitioners have navigating the complex and technical world of habeas in state and federal court. It's challenging even for smart, motivated petitioners like Ms. Rodriguez. And as a result, the district court was presented with a record that was complicated, with evidence presented a bit here and a bit there. So one question, and the first question that I intend to address this morning, is whether the district court was under any obligation to consider the additional documents submitted with Ms. Rodriguez's motion to expand the record. Can you make clear to me what's in that set of documents? Are some of them things that were never even submitted in the comparable motion in the state post-conviction proceedings, and then some of them are a subset of that? What exactly are we dealing with? Yes. I would be glad to do that, and I have a chart. So the documents that were presented in state court and federal court are the event chronology, the supplemental report of Officer Detective Barber. There was one document that was only submitted in state court, which we don't have in the record, and that was an affidavit of Ms. Rodriguez. We don't have that document. And then the documents that were only submitted in federal court are the supplemental report of Officer Schrage, the interview by trial counsel of Officer Schrage, and the interview by trial counsel of Officer Brady. Okay. So this morning, I am going to argue, yes, that the district court should have considered all at least all of the evidence that was before the state court in trying to assess whether the state court Why isn't it barred under E-2 under McLaughlin? It's not barred under E-2 because, and this goes to the 28J letter that I filed a few years ago, the state court should have considered all of the evidence that was before the state court in trying to assess whether the state court Why isn't it barred under E-2 under McLaughlin? It's not barred under E-2 because, and this goes to the 28J letter that I filed a few years ago, the state court should have considered all of the evidence that was before the state court in trying to assess whether the state court Why isn't it barred under E-2 under McLaughlin? Well, I think one issue that occurred in the state court proceedings was that she had counsel appointed, and that counsel essentially said, there are no issues here, which, as a habeas lawyer, I find remarkable. So she was on her own, and she did submit these documents at a later date than would have been optimal. But the state court, at ER-41, the court says the court will accept defendants' understanding of her description, interpretation of the portion of her conversation dealing with Yandy. The court accepts that based on the new documents. I thought the better reading of it was that they were alternative holdings, that there was a procedural default in presenting this material, but that in the alternative, considering the material, it doesn't make a difference. Do you think that's a fair reading, or do you disagree with it? I think that's a fair reading. I do think that the court, you know, initially said, we don't have to consider this at all, but then the court did consider it and held that it didn't matter. And I think that when the district court is looking at the state court's decision, it should have considered at least all of the evidence that the state court was considering and making factual determinations about. So the state court said, you know, at ER-43, at footnote 5, the court relies on the was one of the new documents submitted to dismiss the allegation that he had threatened to take her children away. And the record is clear here. The district court did not do alternative rulings similar to what the state court had done. That's correct. The district court just refused to consider the motion, or denied the motion, to expand the record, and so considered only the evidence that was before the state court initially, which is the trial transcripts and the second interview of Ms. Rodriguez with Detective Barber. I will say that even if the district court properly denied the motion to expand the record, the state court's decision was still unreasonable under D-2, even based on the initial record before that court, because the allegations and the evidence before the court at that point warranted an evidentiary hearing. And so the state court's fact-finding was deficient when the court refused to hold one, even on that record. So there should have been a hearing on whether or not she was in custody during the first interview with Officer Brady. Barber's testimony at trial made clear that the officers were continuously with both Rodriguez and Cordova, that Cordova wasn't free to leave, that Rodriguez was sitting with an officer on the bench when Barber arrived. The — there should have also been a hearing on Detective Barber's threats to remove Ms. Rodriguez's daughter and have CPS seize that child. Why, counsel, do you maintain there should have been a hearing? Because Ms. Rodriguez submitted a verified petition in which she alleged that Detective Barber had threatened her, and that as a result of that threat, she gave the second interview, such that her waiver of her Fifth Amendment right against self-incrimination was no longer valid. There is also evidence in — Before you move to that, why would the federal habeas court not simply defer to what the state court found in that regard, on all those matters? Because the state court, given the record before it, to the extent it found that Detective Barber didn't threaten her, that's an unreasonable determination of fact based on the record, including the interview of Ms. Rodriguez by Detective Barber, where she repeatedly begs him not to take her child. It's also unreasonable because an evidentiary hearing was warranted. And so when the state court refused to engage in the fact-finding process that was necessary based on the allegations and the transcript of that interview that was submitted initially, it brings its decision under D-2 as unreasonable in terms of the process. I could be mistaken. I've never thought of the unreasonableness inquiry as being a procedural inquiry as opposed to a substantive merits inquiry. In this circuit, it is, and it has — courts have repeatedly held, and I've cited some of them in the opening brief. Taylor v. Maddox, Nunes, there's a Velazquez unpublished case where the court said that given the allegations in the petition, the state court's refusal to hold an evidentiary hearing means that its decision was rested on unreasonable determinations of fact. So there is a process component to it in this circuit. Unless the court has other questions at this moment, I will reserve the remainder of my time for rebuttal. Thank you, counsel. We'll hear from the State. May it please the Court. Rebecca Jones from the Attorney General's Office for Arizona for the Respondent Appellees. Counsel, could you please speak up a little? We're having — I'm having some difficulty hearing you. Absolutely, Judge. Unless the court has any questions to start with, I'll start with Issue 1. In this case, the record should not have been expanded by the district court, and they did not abuse their discretion in failing to expand the record because the state court procedural requirements had not been met. I do want to clarify, when you spoke to Appellant's counsel about what documents were where and when, what was submitted in her motion for rehearing were excerpts from the interview with Barber, and what was submitted in the district court motion to expand was the entirety of the transcript. So there — that is a slight difference I just wanted to clarify. Are all of these documents part of the state court record in your view? No. Which, if any, were part of the state court record? I don't believe that any of them were part of the state court record because they were not admitted as part of the trial or the pretrial process. Do you agree that the best reading of the state court rulings, both the post-conviction and the court of appeals decision, is that they relied on alternative grounds, that there was a procedural default in the presentation of this evidence, but that in the alternative, considering it, it wouldn't have made a difference? Yes, I do. Okay. And you agree that the district court did not do that? I do agree. Okay. Great. So if the state court made the alternative ruling, is it fair to say that the state court considered those documents then? I don't think it is because they didn't — it wasn't we considered them and they don't matter, and also they weren't properly presented. It was they weren't properly presented. But even if they had been, they wouldn't matter. Well, how could the court say that they wouldn't matter if it didn't consider them? Because I think they — their analysis could well have stopped after they weren't properly committed. Yeah, but that's not what the alternative ruling said. The alternative ruling said it wouldn't have made a difference. And how can that determination be made without knowing what was in them? I think that's a fair question, Judge. I think that we don't know from the state court rulings whether they read and considered the additional documentation or whether they made that finding of, even if we take all of this as true, it wouldn't have changed the decision because the decision was valid. If those documents were considered in accordance with the alternative ruling, would they be part of the state record at that point? Yes. The ones that were presented at the state court level, I think, would be at that point. Thank you. I also think it's important to note that although Ms. Rodriguez's initial PCR petition was denied in the state court, after her counsel filed the notice of no colorable claims, she did file a pro se petition. And at that point, she could well have attached those documents, which were in existence except perhaps for the affidavit of truth, at the time of the initial her initial pro se petition. Let me ask you this. If the district court had considered those documents, in your view, would it have changed the outcome? No. And I'm happy to discuss why. So, again, the standard is abuse of discretion. And the State's position is that the district court did not abuse its discretion because the motion to suppress and the motion to expand and the motion to reconsider would have been futile. You know, in this case, there was a motion to suppress pretrial filed regarding Rodriguez's statements. And there is double presumption under AEDPA of deferential to the counsel's actions at the trial court level. I don't think it's reasonable to find that Rodriguez was in custody for her interview with Detective — with Officer Brady. He was not at the hospital for this incident. He started investigating the incident, but the circumstances, not a specific person. Rodriguez was not a suspect. Brady did not know that a woman was alleged to be involved. There is no objective factor suggesting that Rodriguez was not free to just walk away back to the waiting room. And a subjective look at it does not satisfy the requirements. Her arguments just don't make sense. She argues that she was known to the police. Well, that's her opinion of having been known to the police. It's subjective. She argues that Barber — Detective Barber thought that her co-defendant was in a gang. Well, that's her opinion of what Barber thought. That's subjective. She argues that she was under police guard. And arguably, that's an objective factor, but that's based on the materials that weren't part of the record and so can't be considered. Even if she was, quote-unquote, under guard, I don't think that's the level of formal arrest triggering a Miranda advisement. And then Brady left the hospital before detectives arrived. So we know that Brady and Barber weren't in communication. In Ms. Rodriguez's challenge to the state court denial of her PCR, it doesn't talk about Barber, but since the state court addressed it, I will address it factually. Well, what we are presented with here, it's interesting because it's kind of a reconfiguration of what was in the state court. In the state court, it was, you know, the custody issue for Miranda purposes in the interview with Brady, and then it was kind of the Edwards issue, invocation of counsel with respect to the interview with Barber. But here, the second part of that's been repackaged as a Missouri v. Cyber, you know, two-step issue. Is the state — I didn't see that the state asserted any kind of procedural default against that argument. So have you waived any procedural default to the presentation of a cyber claim? Yes, Judge. Okay. I believe that's true. But that would mean we'd review the cyber claim de novo, but it presents an interesting issue because your brief points out the first portion of the cyber claim is the first issue. Yes. Which is exhausted and is reviewed for epideference. Yes. Where does that leave us in terms of the standard review of the cyber issue and its component of the, you know, the Brady-Miranda issue? I think it's a great question, Judge. And if I knew the answer, I would be someplace other than where I am right now. I think that it's an issue for the court to determine where that leaves the standard of review. I think, you know, it's a bifurcated process by nature of, as Your Honor pointed out, the first part of that question being the first issue raised in the habeas petition. Am I right that you cannot do a cyber claim without a predicate first-step Miranda violation? So the cyber claim is 100 percent dependent on the success of the Miranda in the custody during the Officer Brady interview. I believe that you are correct, Judge. However, when we talk about the Miranda issue with regards to Detective Barber, there is no evidence to support Rodriguez's allegations of coercion. She already knew she was going to jail. There was no unambiguous invocation. Barber responded appropriately to clarify whether she was invoking her right to counsel. And her story doesn't make sense. If Barber had threatened her child, it doesn't make sense that she would not have told trial counsel about that. It does not make sense that that wouldn't have been a part of that pretrial suppression hearing. Additionally, there is no evidence in the record to support that there was any kind of intentional two-step process to subvert the Miranda requirements. And because the evidence does not support a finding that her statements were in violation of Miranda, the mere fact that her statements hurt her and were prejudicial does not render counsel ineffective. Therefore, the district court had no obligation to hold an evidentiary hearing because her claims did not meet the standard of presenting facts which, if true, probably would have changed the verdict. And there was other evidence to support conviction. And if the court has no further questions, I respectfully ask that this court deny relief. It appears not. Thank you, counsel. Rebuttal? I want to begin with Judge Collins' question about the standard of review for the two-step claim. I think the best analogy would be a Strickland claim where the State court only reached one of the two prongs of Strickland. So if the court, for example, only reached the deficient performance prong, then this court would review that determination under AEDPA and then would review the prejudice determination de novo. And there is precedent for that. And I think that's the right approach here. So you would agree that you have to win on the custody Miranda issue for the interview with Officer Brady in order, as a predicate, to then making the Seibert claim. Do you agree with that? That's correct. Okay. So and then you agree that even when it's viewed through the lens of a component of the Seibert claim, that custody issue, which was addressed by the State court, is still reviewed deferentially under AEDPA? I would — a slight modification. I would agree that AEDPA applies about D2. But subject to your arguments that AEDPA doesn't apply in the first place to the straight argument. Exactly. Okay. So we would have to satisfy D2. We didn't raise a D1 argument here. We have to satisfy D2 for that first component. Then this Court reviews the second component de novo. Let me rephrase my question. Nothing about how we handle the interview about whether she was in custody during the interview with Brady and whether she was entitled to Miranda warnings. Nothing about our review of that issue depends on whether we're looking at it as the straight Miranda claim or as a component of the Seibert claim. Is that a fair statement? I would agree with that. Okay. And I think, you know, I've set forth the arguments for why I believe that the State Court should be entitled to review the whole thing de novo. And I just wanted to touch upon the arguments under de novo review. So I just wanted to talk about the evidence that if the district court had performed a de novo review, I wanted to talk about the evidence that was just before the district court, including all of the documents submitted in the motion to expand the record. Because I think if you look at all of that evidence, you cannot maintain that she was not in custody. There was a series of guards for more than six hours standing with her in November outside when she was barely clothed out, you know, there's an allegation in one of her documents that she, that a female guard would come to escort her to the restroom. I don't think there's any credible reading of those documents that suggests she, that an objective person would feel that she was free to leave. Thank you, counsel. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, COLLINS, Fitzwater